IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

---

CHARLES E. ADAMS; JOYCE D.
ADAMS; JEFFREY G ADAMS; KARIS
W. ADAMS; JIMMY K. ALLEN;
CHARLOTTE A. ANGERSTEIN;
JEANNIE ARNOLD; ASHLEY M.
ARNOLD; JOY D. ARNOLD; JIMMY D
AZBILL; TINA R. BAILEY; BRITTANY
BAILEY; TONI N. BALL; MINNIE H.
BANKS; ALPHONSO O BANKS; JOE W.
BARTHOLOMEW; MARY L.
BARTHOLOMEW; MARY K.
BARTHOLOMEW; ANNA P.
BARTHOLOMEW; SANDRA BASKIN;
MYRTLE L. BAWCUM; JOHN
BELANGER; SHELLY BELANGER;
LARRY T. BELK; DEBORAH R.
BINGHAM; JERRY A. BINGHAM;
ROCKY BINGHAM; JOANN BINGHAM;
MARY D BLACKWELL; ELAINE B.
BLANKENSHIP; BETTY J.
BLANKENSHIP; DANIEL W.
BLANKENSHIP; ANGELA
BLANKENSHIP; FLORENCE
BOATWRIGHT; JOHN A BOBBITT;
LINDA BOBBITT; SHARON S. BOOTHE;
CHRIS L. BOSTIC; CHARLES E.
BOWMAN; VICTORIA R. BRADFORD;
NICHOLAS BRADFORD; PATRICIA L.
BRITT; AMBER D. BRITT; ELLA J.
BROWN; RAFQUIC J. BROWN;
TIFFANY L. BURCHAM; EVELYN
BURKHEAD; FRANCENE D. BURTON;
JIMMY BURTON; ANITA BYNUM;
TACARRA BYNUM; MOE F. BYNUM;
GLADYS P. CAMPBELL; FREDDIE G.
CARRINGTON; SHARI CARTER; GAIL
CARVER; SHARON CARY; ROSIE
CATHEY; CLARANCE W. CATHEY;
SHELIA A. CLARK; JESSIE W.
CLENNEY; KAREN J. CLENNEY;
JACQUELINE COMER; ROBERT

COMPTON; JEMMA COOPER; JAMES C.
COOPER; JONNA R. COOPER;
LAWANDA M. COPELAND;
CATHERINE CORBITT; TAMERIA K.
CORLEW; ANNETTE COUCH;TERRY
M. CRIDER; SUSAN L. CROWE; VICKI
D CROWNOVER; LANNY D. CULVER;
CHARLES CULVER; KENDRA L.
CURTIS; MARY L. DAVIS; CANDI L.
DAVIS; ROCHELLE DEBERRY; MARY
F. DEFORE; SARAH F. DERRYBERRY;
LEONARD R. DERRYBERRY; BRENDA
K. DERRYBERRY; LINDA DODDS;
ELAINE DONER; GORDON R.
DOUGLAS; MICHAEL H. DOUGLAS;
LINDA L. DOUGLAS; MELANIE R.
DOUGLAS; BRENDA J. DOUGLAS;
WALISSA DUGAN; WILLIAM H. DUKE;
DEENA T. DUKE; BRENT M. DUKE;
BOBBY W. DUKE; JOHN P. DUNAWAY;
ANGLUS EDWARDS; GENESE
EDWARDS; DENNIS EDWARDS; LISA
L. EVANS; JO ANN FAUGHT; SAM
FAUGHT; J MICHAEL FESMIRE; LINDA
FESMIRE; TAMMY L. FESSLER;
WENDY N. FLANAGAN; REGINA H.
FLATT SIDES; PAULA FOREMAN;
BIANCA L. FORNEY; KIMBERLY
FRENCH; DAVID FRIZZELL; ADDISON
S. GARRETT; MARTY GOFF; MARY B.
GOFF; BILLIE M. GOLLADAY;
HAROLD W. GOLLADAY; BARBARA
GORDON; GENETTE GORDON;
ROBERT GORDON; TRACY GRAVES;
LISA GRIGGS; JEANETTE M. GUIDER;
LENNON G. HAGGARD; JAMES E.
HAMLETT; HAROLD HARMON;
PATRICIA HARMON; MARY L.
HARMON; DECOTA HARMON; LEON
O. HARMON, JR.; DEWAYNE T
HARRIS; LAYNE K. HART; CAREY A.
HART; LISA R. HART; PAMELA T.
HART; RANDY L. HART; CHASE A.
HARTLE; BRENDA K. HAYES; DANNY
A HAYES; GARY HENDRIX; CYNTHIA
G. HENDRIX; SAMMY D. HENSLEY;

LAWANDA S. HENSLEY; REX A.
HERNDON; MATTHEW G, HERNDON,
JR.; FRANK L. HEWITT; RHONDA M.
HICKS; RONALD G. HICKS; HARRY D
HOLLINGSWORTH; JOSEPH M.
HOLMES; KATIE M. HOLMES; JOE A
HOLMES; ELIZABETH W. HOLMES;
JAMES HOPEWELL; TARRA HOWELL;
MARTHA HOWELL; KAY HUGHES;
ROYAL PROPERTIES INC.; WILBERT
JEFFERSON; VIRGINIA JEFFERSON;
ANDY JIMENEZ; ARLINDA JOHNSON;
TASHA JOHNSON; JAMES F. JOHNSON;
SHEILA ANN HOLIDAY JOHNSON;
PRISCILLA A JOHNSON; JAMES G
JOHNSON, JR.; CARRIE JONES; DORIS
F. JONES; BUFORD L. JONES;
FRANKLIN JOWERS; JEAN JOWERS;
FRANKLIN W. JOWERS; BETTIE C.
JOYNER; DANNY J. KEE; AMANDA
KEE; JERRY E. KELLY; BILLY KELLY,
SR.; JUDY KELLY; BILLY W. KELLY,
JR.; TERESA KIZER; MECHELL
LANCASTER; TASSURE LANCASTER;
MIKE L. LANDRETH; HUNTER R.
LAWTON; PEGGY GREENE LECROY;
SHIRLEY J. LEWIS; LINDA W. LITTLE;
KATHY S. LOWE; DAVID LUNSFORD;
DAVID MACKEY; BETTY J. MANESS;
RICKY C. MANESS; MACK A. MANESS;
NANCY H. MANESS; JULIE A.
MANESS; MARY J. MANESS; FRANCES
H. MANESS; DONNA K. MARTIN;
ABBIE L. MASSEY; ASHLEY B. MAYO;
LINDA C MCALEXANDER; THOMAS D
MCALEXANDER; JERRY MCBRIDE;
BOBBIE A. MCCANN; JUSTIN
MCCOMIC; TOMMY MCCULLOUGH;
MISTY MCGEE; STEPHEN Y.
MCGUIRE; DAN B. MCGUIRE; BETTY
MCHONE; MILLY HAZEL MCPEAKE;
DENNIS C. MEADOWS; PAMELA A.
MELTON; DWIGHT R. MELTON; EMMA
JEAN MELTON; WILLARD T MELTON;
BRENDA MELTON; MARVIN L.
MILBURN; DAVID A. MILES; DONNA J.

MILES; MARTHA J. MILLEN; MELDA
MILLS; DONNY C. MONGOMERY; ROY
D. MONTGOMERY; MICHAEL L.
MONTGOMERY; DOROTHY H.
MOONEY; LISA J. MOONEY; BOBBIE
N. MOORE; DIANN NIELSON; MARY R.
NORWOOD; MARY O'DELL;
KIMBERLY A. O'NEILL; SHELIA Y.
PARKER; DOUGLAS E. PATE; HARPER
PEACOCK; ANTONIO PEARSON; CORI
R. PERRY; BENISHIA E. PHILLIPS;
CAROLYN PINKSTAFF; GARY L. POPE;
HELEN POPE; JAMES L. POWERS;
MARK POWERS; CARLA D POWERS;
SHARON D POWERS; JAMES L.
POWERS; JEWEL POWERS; MAXINE
PRIDDY; WILLIE M. H. PRIDDY;
DANNY R. RATLIFF; BARBARA
RATLIFF; MONICA C. RAYAS; RICKY
RENFROE; NATASHA F. RENFROE;
HAROLD RENFROE; NENA C. RHODES;
ROBERT W. RICHARDSON; CAROLYN
ROBERTS; REGINA O. ROBERTS;
MARK ROE; RICHARD RUSSELL;
ZACHERY B. RUTKOWSKI; LISA
DAWN SANDERS; GREGORY K.
SCOTT; TOMMY S. SCOTT; LINDA D.
SCOTT; ROBERT L. SEATS; BERNICE
SEGUNDO; SANDRA J. SELLERS;
MARY L. SHUTES; BOBBY SIEGLER;
TIMOTHY N. SIKES; DARLENE
SIMMONS; LINDA L. SINGLETON;
JERRY L. SINGLETON; JUDY SMITH;
KIMBERLY SMITH; DONNA L. SMITH;
SARAH F. SORRELL; NICOLE D.
SPENCER; CYNTHIA SPRINGER;
BLAKE A. STANFILL; GEORGIA L.
STANFORD; JAMES P STATEN;
ADDISON G. STEWART; DEBRA P.
STORY; GEORGE E. SULLIVAN;
TOMMY W. TART; NIKKI M. TART;
LARRY TAYLOR; GLORIA A. TAYLOR;
GINGER E. TAYLOR; AARON T.
TAYLOR; CHRISTOPHER M. TAYLOR;
STEPHANIE TAYLOR; GAYLA L.
TEAGUE; SUSAN R. THOMAS; DINA M.

THOMAS; TAMMIE TODD; SHEILA K.
TODD; STEPHANIE TROTTER; JEREME
A. TUBBS; STEPHANIE C. TUBBS;
FELIX TUGGLES, JR.; TERSEA D.
TULLEY; AMBER TULLEY;
CHRISTOPHER M. TULLEY; DONALD
H. WADLEY; MARGARETT N.
WADLEY; JAMES J. WALKER, JR.;
GINGER WALLACE; SARAH JANIE
WALLACE; STEPHANIE WALLS;
JONATHAN WALLS; TAMMY WARD;
SUSAN H. WEANT; JOHN A. WEANT;
BRUCE E. WEBB; MARY M. WEBB;
SAMANTHA J. WHEELER; CHARLES
W. WHITE; JOYCE C. WHITE; TERESA
G. WIGGINS; MARGIE L. WIGGINTON;
WANDA WILKINSON; BRIAN
WILLIAMS; DANA WILLIAMS; LANA
WILLIAMS; SELENIA WILLIAMS;
STEPHANIE A. WILLIAMS; EVENTURE
WILLIAMS; JACKIE B. WILLIAMS;
WANDA W. WILLIAMS; KIMBERLY M.
WILLIAMS; GENEVA H. WILLIAMS;
JOE R. WILLIAMS; TERESA A.
WILLIAMS ATKINS; ERNEST
WILLIAMS, JR.; TOMMY G. WILSON;
AARON B. WILSON; BRANDON
WILSON; SANDY W. WILSON; JOHN B.
WILSON, JR.; JEFFREY L. WOOD;
JEFFREY K. WOODS; WILMA F.
WOODS; BRANDON R. WOODS;
DWANNA YARBRO; and PATRICIA
YARBRO
,

      Plaintiffs,

v.

ADIENT US LLC; JOHNSON
CONTROLS, INC.; MANUFACTURERS
INDUSTRIAL GROUP, L.L.C.; JOHN
ZARDIS; ANDRE GIST;
MANUFACTURERS INDUSTRIAL
GROUP, LLC; MIG STEEL
FABRICATION, LLC F/K/A MIG

No.:1:18-cv-01179
JURY TRIAL DEMANDED

CONSTRUCTION SERVICES,
LLC;FICTITIOUS DEFENDANTS A
THROUGH Z, being those individual
persons, partnerships and/or corporations
who and/or which are responsible for the
release of trichloroethylene and other Toxic
Chemicals into the air, soils, surface water
and/or groundwater in, on and/or adjacent to
the Plaintiffs' property in Henderson
County, Tennessee; and/or (c) the Plaintiffs'
bodies, thereby proximately causing injury
and damage to the Plaintiffs, and whose
identities are otherwise unknown at this
time, but who and/or which will be added by
amendment when ascertained,

Defendants.

---

FIRST AMENDED COMPLAINT FOR MONETARY DAMAGES

---

Plaintiffs file this first amended complaint for monetary damages and injunctive relief

against Defendants, Adient US, LLC, Johnson Controls, Inc., Manufacturers Industrial Group

L.L.C. (the "Dissolved MIG"), John Zardis, Andre Gist, Manufacturers Industrial Group LLC

(the "Active MIG"), MIG Steel Fabrication, LLC f/k/a MIG Construction Services, LLC ("MIG

Steel") and Fictitious Defendants A through Z, and state in support as follows:

## I.    INTRODUCTION

1.    This lawsuit concerns Defendants' past and continuing improper storage,

discharge, release, and inadequate remediation of Trichloroethylene (TCE), Tetrachloroethylene

(PCE), cis-1,2-dichloroethylene, trans-1,2-dichloroethylene, 1,1-dichloroethylene and other

hazardous and harmful chemicals and pollutants (hereinafter collectively referred to as "Toxic

Chemicals") from and around the industrial facility located at 659 Natchez Trace Drive,

Lexington, Tennessee 38351 (the "Industrial Property").  The Industrial Property has been used

to manufacture automobile parts and is currently owned or operated by Adient US, LLC, (a subsidiary or affiliate of Johnson Controls, Inc.) and was formerly owned or operated by Johnson Controls, Inc.; and Manufacturers Industrial Group L.L.C. or Manufacturers Industrial Group LLC. The Toxic Chemicals used at and near the Industrial Property have infiltrated the air, soil, surface water, and groundwater of the business, residential, and publicly owned properties surrounding the Industrial Property. These chemicals pose a significant health and environmental hazard. According to research and investigations by Adient US, LLC's and Johnson Controls, Inc.'s own representative, Weston Solutions, Inc. ("Weston"), a migrating plume of Toxic Chemicals extends out from the Industrial Property toward Owl Creek and its unnamed tributaries to the east and southeast; Town Branch and Beech River to the south; and One Mile Branch and its unnamed tributaries to the west. A second plume of Trichloroethylene exists at Defendants' monitoring well MW-59I, which is just east of Owl Creek and about 1,500 feet north of Dickson Lane. The Toxic Chemicals threaten not just the groundwater or aquifer itself – which Weston acknowledges the Toxic Chemicals have rendered undrinkable – but have also vaporized becoming airborne and inhaled by humans. Additionally, the Toxic Chemicals may have further degraded into other dangerous chemicals, such as vinyl chloride. Defendants have failed to take the steps necessary to adequately and sufficiently protect the Plaintiffs' properties, health and the environment from this toxic contamination. Plaintiffs are current and past owners and/or occupiers of properties in Lexington, Tennessee, around the Industrial Property. Plaintiffs assert claims based on negligence, gross negligence, negligence *per se*, intentional infliction of emotional distress, negligent infliction of emotional distress, trespass, public nuisance, private nuisance, breach of duty to warn, battery, assault, and common law strict liability. They seek compensatory and punitive damages for physical harm and emotional

7

distress, for the damage caused to their properties, and for the diminished value of their properties, and also seek injunctive relief requiring Defendants to adequately and sufficiently remediate Trichloroethylene (TCE), Tetrachloroethylene (PCE), cis-1,2-dichloroethylene, trans-1,2-dichloroethylene, 1,1-dichloroethylene and other hazardous and harmful chemicals and pollutants in the affected area.

## II.    PARTIES

2.     Plaintiffs, CHARLES E. ADAMS; JOYCE D. ADAMS; JEFFREY G ADAMS; KARIS W. ADAMS; JIMMY K. ALLEN; CHARLOTTE A. ANGERSTEIN; JEANNIE ARNOLD; ASHLEY M. ARNOLD; JOY D. ARNOLD; JIMMY D AZBILL; TINA R. BAILEY; BRITTANY BAILEY; TONI N. BALL; MINNIE H. BANKS; ALPHONSO O BANKS; JOE W. BARTHOLOMEW; MARY L. BARTHOLOMEW; MARY K. BARTHOLOMEW; ANNA P. BARTHOLOMEW; SANDRA BASKIN; MYRTLE L. BAWCUM; JOHN BELANGER; SHELLY BELANGER; LARRY T. BELK; DEBORAH R. BINGHAM; JERRY A. BINGHAM; ROCKY BINGHAM; JOANN BINGHAM; MARY D BLACKWELL; ELAINE B. BLANKENSHIP; BETTY J. BLANKENSHIP; DANIEL W. BLANKENSHIP; ANGELA BLANKENSHIP; FLORENCE BOATWRIGHT; JOHN A BOBBITT; LINDA BOBBITT; SHARON S. BOOTHE; CHRIS L. BOSTIC; CHARLES E. BOWMAN; VICTORIA R. BRADFORD; NICHOLAS BRADFORD; PATRICIA L. BRITT; AMBER D. BRITT; ELLA J. BROWN; RAFQUIC J. BROWN; TIFFANY L. BURCHAM; EVELYN BURKHEAD; FRANCENE D. BURTON; JIMMY BURTON; ANITA BYNUM; TACARRA BYNUM; MOE F. BYNUM; GLADYS P. CAMPBELL; FREDDIE G. CARRINGTON; SHARI CARTER; GAIL CARVER; SHARON CARY; ROSIE CATHEY; CLARANCE W. CATHEY; SHELIA A. CLARK; JESSIE W. CLENNEY; KAREN J.

CLENNEY; JACQUELINE COMER; ROBERT COMPTON; JEMMA COOPER; JAMES C.

COOPER; JONNA R. COOPER; LAWANDA M. COPELAND; CATHERINE CORBITT;

TAMERIA K. CORLEW; ANNETTE COUCH;TERRY M. CRIDER; SUSAN L. CROWE;

VICKI D CROWNOVER; LANNY D. CULVER; CHARLES CULVER; KENDRA L.

CURTIS; MARY L. DAVIS; CANDI L. DAVIS; ROCHELLE DEBERRY; MARY F.

DEFORE; SARAH F. DERRYBERRY; LEONARD R. DERRYBERRY; BRENDA K.

DERRYBERRY; LINDA DODDS; ELAINE DONER; GORDON R. DOUGLAS; MICHAEL

H. DOUGLAS; LINDA L. DOUGLAS; MELANIE R. DOUGLAS; BRENDA J. DOUGLAS;

WALISSA DUGAN; WILLIAM H. DUKE; DEENA T. DUKE; BRENT M. DUKE; BOBBY

W. DUKE; JOHN P. DUNAWAY; ANGLUS EDWARDS; GENESE EDWARDS; DENNIS

EDWARDS; LISA L. EVANS; JO ANN FAUGHT; SAM FAUGHT; J MICHAEL FESMIRE;

LINDA FESMIRE; TAMMY L. FESSLER; WENDY N. FLANAGAN; REGINA H. FLATT

SIDES; PAULA FOREMAN; BIANCA L. FORNEY; KIMBERLY FRENCH; DAVID

FRIZZELL; ADDISON S. GARRETT; MARTY GOFF; MARY B. GOFF; BILLIE M.

GOLLADAY; HAROLD W. GOLLADAY; BARBARA GORDON; GENETTE GORDON;

ROBERT GORDON; TRACY GRAVES; LISA GRIGGS; JEANETTE M. GUIDER; LENNON

G. HAGGARD; JAMES E. HAMLETT; HAROLD HARMON; PATRICIA HARMON; MARY

L. HARMON; DECOTA HARMON; LEON O. HARMON, JR.; DEWAYNE T HARRIS;

LAYNE K. HART; CAREY A. HART; LISA R. HART; PAMELA T. HART; RANDY L.

HART; CHASE A. HARTLE; BRENDA K. HAYES; DANNY A HAYES; GARY HENDRIX;

CYNTHIA G. HENDRIX; SAMMY D. HENSLEY; LAWANDA S. HENSLEY; REX A.

HERNDON; MATTHEW G, HERNDON, JR.; FRANK L. HEWITT; RHONDA M. HICKS;

RONALD G. HICKS; HARRY D HOLLINGSWORTH; JOSEPH M. HOLMES; KATIE M.

HOLMES; JOE A HOLMES; ELIZABETH W. HOLMES; JAMES HOPEWELL; TARRA

HOWELL; MARTHA HOWELL; KAY HUGHES; ROYAL PROPERTIES INC.; WILBERT

JEFFERSON; VIRGINIA JEFFERSON; ANDY JIMENEZ; ARLINDA JOHNSON; TASHA

JOHNSON; JAMES F. JOHNSON; SHEILA ANN HOLIDAY JOHNSON; PRISCILLA A

JOHNSON; JAMES G JOHNSON, JR.; CARRIE JONES; DORIS F. JONES; BUFORD L.

JONES; FRANKLIN JOWERS; JEAN JOWERS; FRANKLIN W. JOWERS; BETTIE C.

JOYNER; DANNY J. KEE; AMANDA KEE; JERRY E. KELLY; BILLY KELLY, SR.; JUDY

KELLY; BILLY W. KELLY, JR.; TERESA KIZER; MECHELL LANCASTER; TASSURE

LANCASTER; MIKE L. LANDRETH; HUNTER R. LAWTON; PEGGY GREENE LECROY;

SHIRLEY J. LEWIS; LINDA W. LITTLE; KATHY S. LOWE; DAVID LUNSFORD; DAVID

MACKEY; BETTY J. MANESS; RICKY C. MANESS; MACK A. MANESS; NANCY H.

MANESS; JULIE A. MANESS; MARY J. MANESS; FRANCES H. MANESS; DONNA K.

MARTIN; ABBIE L. MASSEY; ASHLEY B. MAYO; LINDA C MCALEXANDER;

THOMAS D MCALEXANDER; JERRY MCBRIDE; BOBBIE A. MCCANN; JUSTIN

MCCOMIC; TOMMY MCCULLOUGH; MISTY MCGEE; STEPHEN Y. MCGUIRE; DAN B.

MCGUIRE; BETTY MCHONE; MILLY HAZEL MCPEAKE; DENNIS C. MEADOWS;

PAMELA A. MELTON; DWIGHT R. MELTON; EMMA JEAN MELTON; WILLARD T

MELTON; BRENDA MELTON; MARVIN L. MILBURN; DAVID A. MILES; DONNA J.

MILES; MARTHA J. MILLEN; MELDA MILLS; DONNY C. MONGOMERY; ROY D.

MONTGOMERY; MICHAEL L. MONTGOMERY; DOROTHY H. MOONEY; LISA J.

MOONEY; BOBBIE N. MOORE; DIANN NIELSON; MARY R. NORWOOD; MARY

O'DELL; KIMBERLY A. O'NEILL; SHELIA Y. PARKER; DOUGLAS E. PATE; HARPER

PEACOCK; ANTONIO PEARSON; CORI R. PERRY; BENISHIA E. PHILLIPS; CAROLYN

PINKSTAFF; GARY L. POPE; HELEN POPE; JAMES L. POWERS; MARK POWERS;

CARLA D POWERS; SHARON D POWERS; JAMES L. POWERS; JEWEL POWERS;

MAXINE PRIDDY; WILLIE M. H. PRIDDY; DANNY R. RATLIFF; BARBARA RATLIFF;

MONICA C. RAYAS; RICKY RENFROE; NATASHA F. RENFROE; HAROLD RENFROE;

NENA C. RHODES; ROBERT W. RICHARDSON; CAROLYN ROBERTS; REGINA O.

ROBERTS; MARK ROE; RICHARD RUSSELL; ZACHERY B. RUTKOWSKI; LISA DAWN

SANDERS; GREGORY K. SCOTT; TOMMY S. SCOTT; LINDA D. SCOTT; ROBERT L.

SEATS; BERNICE SEGUNDO; SANDRA J. SELLERS; MARY L. SHUTES; BOBBY

SIEGLER; TIMOTHY N. SIKES; DARLENE SIMMONS; LINDA L. SINGLETON; JERRY L.

SINGLETON; JUDY SMITH; KIMBERLY SMITH; DONNA L. SMITH; SARAH F.

SORRELL; NICOLE D. SPENCER; CYNTHIA SPRINGER; BLAKE A. STANFILL;

GEORGIA L. STANFORD; JAMES P STATEN; ADDISON G. STEWART; DEBRA P.

STORY; GEORGE E. SULLIVAN; TOMMY W. TART; NIKKI M. TART; LARRY TAYLOR;

GLORIA A. TAYLOR; GINGER E. TAYLOR; AARON T. TAYLOR; CHRISTOPHER M.

TAYLOR; STEPHANIE TAYLOR; GAYLA L. TEAGUE; SUSAN R. THOMAS; DINA M.

THOMAS; TAMMIE TODD; SHEILA K. TODD; STEPHANIE TROTTER; JEREME A.

TUBBS; STEPHANIE C. TUBBS; FELIX TUGGLES, JR.; TERSEA D. TULLEY; AMBER

TULLEY; CHRISTOPHER M. TULLEY; DONALD H. WADLEY; MARGARETT N.

WADLEY; JAMES J. WALKER, JR.; GINGER WALLACE; SARAH JANIE WALLACE;

STEPHANIE WALLS; JONATHAN WALLS; TAMMY WARD; SUSAN H. WEANT; JOHN

A. WEANT; BRUCE E. WEBB; MARY M. WEBB; SAMANTHA J. WHEELER; CHARLES

W. WHITE; JOYCE C. WHITE; TERESA G. WIGGINS; MARGIE L. WIGGINTON;

WANDA WILKINSON; BRIAN WILLIAMS; DANA WILLIAMS; LANA WILLIAMS;

SELENIA WILLIAMS; STEPHANIE A. WILLIAMS; EVENTURE WILLIAMS; JACKIE B. WILLIAMS; WANDA W. WILLIAMS; KIMBERLY M. WILLIAMS; GENEVA H. WILLIAMS; JOE R. WILLIAMS; TERESA A. WILLIAMS ATKINS; ERNEST WILLIAMS, JR.; TOMMY G. WILSON; AARON B. WILSON; BRANDON WILSON; SANDY W. WILSON; JOHN B. WILSON, JR.; JEFFREY L. WOOD; JEFFREY K. WOODS; WILMA F. WOODS; BRANDON R. WOODS; DWANNA YARBRO; and PATRICIA YARBRO are property owners or residents in Lexington, Tennessee, near the Industrial Property.

3.      Defendant Adient US, LLC is a Michigan limited liability company registered to conduct business in the state of Tennessee, which may be served through its registered agent CT Corporation System, 300 Montvue Road, Knoxville, Tennessee 37919-5546.

4.      Defendant Johnson Controls, Inc. is a Wisconsin corporation registered to conduct business in the state of Tennessee, which may be served through its registered agent CT Corporation System, 300 Montvue Road, Knoxville, Tennessee 37919-5546.

5.      Defendant Manufacturers Industrial Group L.L.C. (the "Dissolved MIG") is a dissolved Tennessee limited liability company with a principal office located at 3700 Modern Industries Parkway, Chattanooga, Tennessee 37410-2380, and may be served through its registered agent John Zardis located at 3700 Modern Industries Parkway, Chattanooga, Tennessee 37410-2380, or at 188 Dalton Branch Road, Tellico Plains, Tennessee 37385-5908. The Dissolved MIG was formed in 1997 and later dissolved in August 2016. The Secretary of State Control Number for the Dissolved MIG is 000337725. Upon information and belief, the Dissolved MIG owned or operated the Industrial Property between December 2006 and October 2013.

6.      Defendant John Zardis is a Tennessee resident and a former officer and member of the Dissolved MIG.  He may be served at 3700 Modern Industries Parkway, Chattanooga, Tennessee 37410-2380, or at 188 Dalton Branch Road, Tellico Plains, Tennessee 37385-5908.

7.      Defendant Andre Gist is a Tennessee resident and a former officer and member of the Dissolved MIG.  Upon information and belief, he may be served at 3700 Modern Industries Parkway, Chattanooga, Tennessee 37410-2380, or at 188 Dalton Branch Road, Tellico Plains, Tennessee 37385-5908.

8.      Defendant Manufacturers Industrial Group LLC (the "Active MIG") is an active Tennessee limited liability company with a principal office located at 228 Rush Street, Lexington, Tennessee 38351-2241, and may be served through its registered agent John Zardis located at 188 Dalton Branch Road, Tellico Plains, Tennessee 37385-5908.  The Active MIG was formed in March 2018.  The Secretary of State Control Number for the Active MIG is 000954229.  Upon information and belief, the Active MIG may be a successor in interest to the Dissolved MIG and thereby responsible for the Dissolved MIG's liabilities.

9.      Defendant MIG Steel Fabrication, LLC f/k/a MIG Construction Services, LLC ("MIG Steel") is a Tennessee limited liability company with a principal place of business located at 228 Rush Street, Lexington, Tennessee 38351.  Defendant MIG Steel Fabrication, LLC may be served through its registered agents John Zardis or Alina McCready at 228 Rush Street, Lexington, Tennessee 38351-2241.

10.     Fictitious Defendants A through Z are individual persons, partnerships, corporations or other entities, which are citizens of Henderson County, Tennessee.  At all times pertinent to this suit, Fictitious Defendants A through Z, did business on or near the Industrial

13

Property. The identities of Fictitious Defendants A through Z are otherwise unknown at this time, but will be added by amendment when ascertained.

### III.    JURISDICTION AND VENUE

11.    This Court has jurisdiction under TENNESSEE CODE ANNOTATED § 16-10-101 et seq.

12.    This District is a proper venue for this lawsuit pursuant to TENNESSEE CODE ANNOTATED § 20-4-101 *et seq.* because a substantial part of the events or omissions giving rise to the cause of action accrued in this county, and it is the county where the unfair or deceptive acts or practice took place.

### IV. BACKGROUND

Ownership and Operation of the Industrial Property

13.    Before 1985, the Industrial Property was owned and operated by Lexington Metal Products Company, a wholly owned affiliate of Ferro Manufacturing Corporation ("Ferro Manufacturing") which was formerly known as Ferro Stamping Company.

14.    Ferro Manufacturing used the Industrial Property to manufacture automotive parts.

15.    In or around 1985, Johnson Controls, Inc. acquired Ferro Manufacturing.

16.    Also, in or around 1985, Johnson Controls, Inc. purchased or acquired the Industrial Property and also used it to manufacture automotive parts.

17.    From approximately December 2006 until October 2013, the Dissolved MIG leased or owned the Industrial Property where it manufactured automotive parts.

18.    Around 2007, the Dissolved MIG or its members established the affiliate MIG Steel that also operated at the Industrial Property.

19.     Around October 2013, Johnson Controls, Inc. re-purchased or regained operation of the Industrial Property where it again manufactured automotive parts.

20.     Around October 2016, Johnson Controls, Inc., spun-off its automotive parts manufacturing unit and formed a new company, Adient US LLC, to take over operations.

21.     Adient US LLC's, primary focus is to continue the operations of divested Johnson Control, Inc.'s divisions that manufactured automotive seating and other automotive parts.

22.     Upon information and believe, Adient US LLC now owns or operates the Industrial Property and manufactures automotive parts there.

<u>Johnson Controls, Inc.'s and Adient US, LLC's Acknowledgment of Toxic Chemical Contamination</u>

23.     Johnson Controls, Inc. and Adient US, LLC, through their representative Weston Solutions, Inc. ("Weston"), have made significant admissions to the Tennessee Department of Environment and Conservation (TDEC) about the toxic contamination at and around the Industrial Property.  While this section includes findings and admissions by Weston, Plaintiffs do not concede that all of Weston's conclusions are accurate.  Plaintiffs reserve the right to provide separate evidence and conclusions of the toxic conditions at and around the Industrial Property.

24.     On or about February 23, 2007, Johnson Controls, Inc. informed the Tennessee Department of Environment and Conservation ("TDEC") that chlorinated compounds existed at the Industrial Property.  Letter of Feb. 23, 2007, from Johnson Controls, Inc. to TDEC.

25.     Johnson Controls, Inc. stated, "At this stage, we believe that the chlorinated compounds originated from on site manufacturing activities and inadvertent discharges from process areas and wastewater conveyances."  *Id.*

26.     Johnson Controls, Inc. then hired Weston Solutions, Inc., ("Weston") to investigate the extent to which the Industrial Property and surrounding area had been contaminated.

27.     Around April 2007, Weston began installing monitoring wells and testing to determine the extent groundwater, surface water, and the air had been contaminated by Toxic Chemicals.

28.     Initial monitor well samples from April, July, and August 2007, and January, April, and May 2008 detected the following chemicals: 1,1,1-trichloroethane (1,1,1-TCA), 1,1-dichloroethan (1,1-DCA), 1,1-dichloroethen (1,1-DCE), cis1,2-dichloroethen (cis-1,2-DCE), trans-1,2-DCE, PCE, trichloroethene (TCE), ethyl benzene, methyl tert butyl ether (MTBE), n-propylbenzene, and total xylenes.  Focused Feasibility Study for Shallow Groundwater Interim Response, Former Johnson Controls Facility, Lexington, Tennessee June 2008 at p. 4.

29.     Weston ESAs found "[a] suite of volatile organic compounds (VOCs), including aromatic and chlorinated hydrocarbons . . . in groundwater samples at concentrations exceeding Tennessee Department of Environment and Conservation (TDEC) screening levels."  See Summary of Updated Remedial Investigation Findings, Former Johnson Controls Facility Lexington, Tennessee March 2008 at ES-1.

30.     By 2008, Weston had detected a toxic groundwater plume under the Industrial Property and surrounding area. *Id.* at ES-1.

31.     Weston's investigation through 2012 found that the groundwater was contaminated with Trichloroethylene (TCE), Tetrachloroethylene (PCE) and TCE degradation products.  See Comprehensive Remedial Investigation and Interim Response Report, Johnson Controls Manufacturing Plant July 2014 at ES-1.

16

32.    Possible Trichloroethylene degradation products include cis-1,2-dichloroethylene, trans-1,2-dichloroethylene, 1,1-dichloroethylene, vinyl chloride, and ethene.  See Comprehensive Remedial Investigation and Interim Response Report, Johnson Controls Manufacturing Plant July 2014 at 5-3.

33.    Weston had found that the underground plume of toxic chemicals had migrated to the nearby residential neighborhood and that the plume predominantly occupied the middle of the underlying aquifer.  *Id.* at ES-2.

34.    In 2009, Weston measured the migrating plume of toxic chemicals to be only 0.26 square miles, but by 2012, the plume was measured at 0.44 square miles.  *Id.* at ES-2 to ES-3.

35.    A map of the migrating, toxic plume as suggested by Weston is marked by the orange lines in the map below, with the black arrows showing the direction that Weston believes the toxic plume is moving.  The blue lines indicate where the aquifer exists.



Comprehensive Remedial Investigation and Interim Response Report, Johnson Controls Manufacturing Plant July 2014 at ES-3 and Fig. ES-1, 3-6, 3-7, Fig. 27a.

36.    Weston has calculated the toxic, migrating plume to be expanding in the south and southeast direction at a rate of 97.6 feet per year.  Comprehensive Remedial Investigation and Interim Response Report, Johnson Controls Manufacturing Plant July 2014 at 3-10.

37.    Weston found that Trichloroethylene occurred throughout most of the toxic plume.  Comprehensive Remedial Investigation and Interim Response Report, Johnson Controls Manufacturing Plant July 2014 at 4-5, 5-3 and Fig. 31.

38.    Weston has found that the toxic plume should discharge into Owl Creek and its unnamed tributaries to the east and southeast; Town Branch and Beech River to the south; and

18

One Mile Branch and its unnamed tributaries to the west. Comprehensive Remedial Investigation and Interim Response Report, Johnson Controls Manufacturing Plant July 2014 at 3-10, 5-10.

39. A separate plume exists at Weston's monitoring well MW-59I, which is just east of Owl Creek and about 1,500 feet north of Dickson Lane. Weston's reports acknowledge that elevated levels of Trichloroethylene exist in the groundwater in this area. Comprehensive Remedial Investigation and Interim Response Report, Johnson Controls Manufacturing Plant July 2014 at 5-2.

40. By 2014, Weston's remediation efforts (which it termed "Interim Response Boundary System" or "IRBS") were found to be "negligible" with regard to "an overall mass removal perspective relative to the extensive footprint of the groundwater plume off-site." *Id.* at ES-3. In other words, the remediation efforts have had little to no effect on the off-site migrating, toxic plume.

41. Weston's remediation efforts included an ozone sparge treatment system. Comprehensive Remedial Investigation and Interim Response Report, Johnson Controls Manufacturing Plant July 2014 at ES-1, 6-1. The ozone sparge treatment basically pumps ozone gas (or $O^3$) into the subsurface in order to try to neutralize toxic chemicals.

42. Weston believes that the plume is discharging or will discharge Toxic Chemicals into Carrington Pond, One Mile Branch, and a tributary of Owl Creek. *Id.* at ES-4.

43. Weston has also concluded that the aquifer has been so badly contaminated that it cannot be used as drinking water. Weston found that "[t]reatment of the plume to acceptable drinking water standards is not possible with [Weston's remediation efforts]." *Id.* at ES-5.

44.     Another significant threat of the Toxic Chemicals, including Trichloroethylene and Tetrachloroethylene and their degradation products, is that they can vaporize and enter the air exposing humans to dangerous chemicals by inhalation.     Comprehensive Remedial Investigation and Interim Response Report, Johnson Controls Manufacturing Plant July 2014 at 5-11 and Fig. 39.

45.     In September 2012, Weston also detected Trichloroethylene (TCE) in several air samples, including residences located at 50 Lakewood Drive, 468 Colonial Drive, and 451 Broad Street.  Letter of Feb. 19, 2016, from Weston to TDEC at 2.

46.     A 2014 report by Weston reiterated that trichloroethylene (TCE), with tetrachloroethylene (PCE) and TCE degradation products are present in the groundwater. Comprehensive Remedial Investigation and Interim Response Report, Johnson Controls Manufacturing Plant July 2014 at ES-1.

47.     Weston also noted that the presence of Trichloroethylene-impacted lignite in the vicinity of the Industrial Property acts as an on-going source of CVOC release to groundwater. Comprehensive Remedial Investigation and Interim Response Report, Johnson Controls Manufacturing Plant July 2014 at ES-3, 7-2.

48.     Lignite is a low-grade mineral coal that is typically dark brown to black in color, retaining a wood and plant texture from which it was formed.  Lignite may absorb toxic chemicals and then later release those toxic chemicals back into the environment.

The Toxic Chemicals that have contaminated Lexington, Tennessee

49.     Defendants have been aware that the following chemicals have contaminated the groundwater as a result of the activities at the Industrial Property: trichloroethylene (TCE),

tetrachloroethylene (PCE), cis-1,2-dichloroethylene, trans-1,2-dichloroethylene, and 1,1-dichloroethylene.  Letter of Feb. 19, 2016, from Weston to TDEC at 4.

50.    Trichloroethylene (TCE) is a manufactured chemical that does not occur naturally in the environment.  According to the EPA's Integrated Risk Information System ("IRIS") database, Trichloroethylene is "carcinogenic to humans by all routes of exposure," including oral exposure and inhalation exposure.  It is a colorless liquid with a sweet odor and taste.  It is a solvent used to remove oils and grease from metal.  Synonyms include trichloroethene, TCE, Triclene, and Vitran.

51.    Tetrachloroethylene (PCE) is a manufactured chemical that is widely used for dry cleaning fabrics and metal-degreasing.  Effects resulting from acute (short-term) high-level inhalation exposure of humans include irritation of the upper respiratory tract and eyes, kidney dysfunction, and neurological effects such as reversible mood and behavioral changes, impairment of coordination, dizziness, headache, sleepiness, and unconsciousness.  The primary effects from chronic (long-term) inhalation exposure are neurological, including impaired cognitive and motor neurobehavioral performance.  Tetrachloroethylene exposure may also cause adverse effects in the kidney, liver, immune system and hematologic system, and on development and reproduction. Studies of people exposed in the workplace have found associations with several types of cancer, including, but not limited to, bladder cancer, non-Hodgkin lymphoma, and multiple myeloma. According to the EPA's IRIS database, tetrachloroethylene is likely to be carcinogenic to humans.  Tetrachloroethylene is a nonflammable colorless liquid with a sharp, sweet odor.  Synonyms include Tetrachloroethene, Perchloroethylene, and PCE.

52.     Cis-1,2-Dichloroethylene and Trans-1,2-Dichloroethylene are highly flammable, colorless liquids used to produce solvents, waxes, and resins.   Cis-1,2-dichloroethylene is a health hazard, particularly for the young and elderly; consumption of the chemical can lead to liver and kidney problems, drowsiness and nausea, and cardiovascular problems.  The EPA has set safety levels for both chemicals.

53.     1,1-Dichloroethylene is an industrial chemical that is not found naturally in the environment.  It is a colorless liquid with a mild, sweet smell.  It is used to make certain plastics and packaging materials.  The primary acute (short-term) effects in humans from vinylidene chloride exposure are on the central nervous system (CNS), including CNS depression and symptoms of inebriation, convulsions, spasms, and unconsciousness at high concentrations. Low-level, chronic (long-term) inhalation exposure of vinylidene chloride in humans may affect the liver.   The EPA has designated the chemical as a possible human carcinogen.

Additional facts related to Plaintiffs' claims

54.     Plaintiffs are current and past owners and/or occupiers of properties in Lexington, Tennessee, near the Industrial Property.

55.     Plaintiffs have been exposed to the Toxic Chemicals, including, but not limited to, Trichloroethylene (TCE), Tetrachloroethylene (PCE), cis-1,2-dichloroethylene, trans-1,2-dichloroethylene, 1,1-dichloroethylene and other hazardous and harmful chemicals and pollutants.

56.     Plaintiffs consist of owners and occupiers of properties where the Toxic Chemicals have vaporized or threaten to vaporize and cause significant health problems to them and their family.

57.    Plaintiffs consist of owners and occupiers of properties above the migrating, toxic plume or within the anticipated path of the migrating, toxic plume.

58.    Plaintiffs also consist of individuals who have sustained mental anguish or emotional suffering as a result of living or being present within the zone of danger created by the pollution and contamination resulting from the Toxic Chemicals, including the migrating, toxic plume.  In particular, Plaintiffs are concerned not only for their own health but for the health of their relatives, especially their children and elderly relatives.

59.    Plaintiffs also consist of individuals who own property that has been damaged or significantly reduced in value as a result of the pollution and contamination resulting from the Toxic Chemicals, including the migrating, toxic plume.

60.    Defendants have also had to install unsightly monitoring wells and other equipment that diminish the value and use of Plaintiffs' properties.

61.    All Defendants have contributed to the pollution and contamination caused by the Toxic Chemicals as a result of their ownership or operation at the Industrial Property.

62.    Upon information and belief, Defendants have willfully, intentionally, or purposefully disposed of Toxic Chemicals in a manner that they knew to be unsafe, illegal, and dangerous to nearby properties, owners, and residents.

63.    Defendants failed to adequately advise Plaintiffs of the pollution and contamination and the possible dangers related to the Toxic Chemicals, including the migrating, toxic plume.

64.    Upon information and belief, Defendants have willfully, intentionally, or purposefully withheld from Plaintiffs information related to the pollution and contamination of Toxic Chemicals, including the dangers and threats arising from the migrating, toxic plume.

65.     Upon information and belief, Defendants intentionally and wrongfully disposed of Toxic Chemicals not just at the Industrial Property but at other locations in Lexington, Tennessee, as well that have injured Plaintiffs and their properties.

66.     Defendants' actions set forth herein and those actions proven at trial were malicious, intentional, fraudulent, or reckless conduct.

67.     Plaintiffs have only recently learned of the contamination by Toxic Chemicals or learned that their personal injuries or property damages were caused or contributed to by the hazardous substances or pollutants origination from the Industrial Property.  The Plaintiffs have timely brought this lawsuit as prescribed by 42 U.S.C. § 9658.

V.     CAUSES OF ACTION

Count 1 – Negligence, Gross Negligence, and Negligence *Per Se*

68.     Plaintiffs incorporate by reference all allegations in all other sections of this Complaint as if fully set forth herein.

69.     Defendants owed a duty to Plaintiffs to exercise due and reasonable care in their use and maintenance of the Industrial Property, and to avoid release and/or discharge of Toxic Chemicals onto the Plaintiffs' properties and/or into their bodies.

70.     Defendants breached their duties owed to the Plaintiffs by engaging in the conduct herein.

71.     Defendants' breaches of their duties constitute negligence or gross negligence

72.     Defendants' breaches also constitute negligence *per se* based on their violations of Tennessee Code Annotated § 69-3-101 et seq. (Water Quality Control Act of 1977), Tennessee Code Annotated § 68-201-101 et seq. (Tennessee Air Quality Act), and Tennessee Code Annotated § 68-211-101 et seq. (Tennessee Solid Waste Disposal Act).

73.     As a direct and proximate result of Defendants' conduct, Plaintiffs have been caused to suffer, and will continue to suffer, significant damages, including, but not limited to, mental anguish, emotional distress, physical harm, threat of physical harm, injury to their property and nearby property and assets, and diminished use and value of their property and nearby property and assets.

<u>Count 2 – Intentional Infliction of Emotional Distress</u>

74.     Plaintiffs incorporate by reference all allegations in all other sections of this Complaint as if fully set forth herein.

75.     Defendants owed a duty to Plaintiffs to exercise due and reasonable care in their use and maintenance of the Industrial Property, and to avoid release and/or discharge of Toxic Chemicals that could inflict emotional distress upon Defendants.

76.     Defendants intentionally or recklessly disposed of the Toxic Chemicals in such as a way as to pollute the Industrial Property and nearby areas, thereby breaching their duties to Plaintiffs.

77.     Upon information and belief, Defendants or Defendants' representatives instructed employees or independent contractors to dispose of Trichloroethylene in an improper way, including, but not limited to, dumping or burying the toxic chemicals at the Industrial Property and at other locations in or around Lexington, Tennessee.

78.     Upon information and belief, Defendants or Defendants' representatives instructed employees or independent contractors to dispose of other Toxic Chemicals in an improper way, including, but not limited to, dumping or burying the toxic chemicals at the Industrial Property and at other locations in or around Lexington, Tennessee.

79.    Defendants' actions of wrongfully disposing of Toxic Chemicals were so outrageous that they are not tolerated by a civilized society.

80.    As a direct and proximate result of Defendants' conduct, Plaintiffs have been caused to suffer, and will continue to suffer, significant damages, including, but not limited to, mental anguish, emotional distress, physical harm, threat of physical harm, injury to their property and nearby property and assets, and diminished use and value of their property and nearby property and assets.

<u>Count 3 – Negligent Infliction of Emotional Distress</u>

81.    Plaintiffs incorporate by reference all allegations in all other sections of this Complaint as if fully set forth herein.

82.    Defendants owed a duty to Plaintiffs to exercise due and reasonable care in their use and maintenance of the Industrial Property, and to avoid release and/or discharge of Toxic Chemicals that could inflict emotional distress upon Defendants.

83.    Defendants negligently disposed of the Toxic Chemicals in such as a way as to pollute the Industrial Property and nearby areas, thereby breaching their duties to Plaintiffs.

84.    Upon information and belief, Defendants or Defendants' representatives instructed employees or independent contractors to dispose of Trichloroethylene in an improper way, including, but not limited to, dumping or burying the toxic chemicals at the Industrial Property and at other locations in or around Lexington, Tennessee.

85.    Upon information and belief, Defendants or Defendants' representatives instructed employees or independent contractors to dispose of other Toxic Chemicals in an improper way, including, but not limited to, dumping or burying the toxic chemicals at the Industrial Property and at other locations in or around Lexington, Tennessee.

26

86.    Defendants' actions of wrongfully disposing of Toxic Chemicals were so outrageous that they are not tolerated by a civilized society.

87.    As a direct and proximate result of Defendants' conduct, Plaintiffs have been caused to suffer, and will continue to suffer, significant damages, including, but not limited to, mental anguish, emotional distress, physical harm, threat of physical harm, injury to their property and nearby property and assets, and diminished use and value of their property and nearby property and assets.

<u>Count 4 – Trespass</u>

88.    Plaintiffs incorporate by reference all allegations in all other sections of this Complaint as if fully set forth herein.

89.    Trichloroethylene (TCE), Tetrachloroethylene (PCE), TCE degradation products and other hazardous chemicals and pollutants released and discharged by Defendants are highly toxic and hazardous chemicals, which have adverse effects upon all forms of life, including humans, animals and fish.  For decades, and continuing through the present, Defendants have engaged and/or otherwise allowed the release and spread of these and other toxic and harmful chemicals (a) onto the Industrial Property and other properties in the Lexington, Tennessee, area; (b) the air, soil, surface water and/or ground water in, on and/or near the Plaintiffs' properties; and/or (c) the Plaintiffs' bodies, thereby proximately causing injury and damage to the Plaintiffs.

90.    Defendants knew or should have known of said hazards regarding these chemicals.

91.    Notwithstanding such knowledge, Defendants have released and continue to release said Toxic Chemicals into the Plaintiffs' properties, in the air, soils, surface water and/or groundwater of their properties.

27

92.     Upon information and belief, Defendants or Defendants' representatives instructed employees or independent contractors to dispose of Trichloroethylene in an improper way, including, but not limited to, dumping or burying the toxic chemicals at the Industrial Property and at other locations in or around Lexington, Tennessee.

93.     Upon information and belief, Defendants or Defendants' representatives instructed employees or independent contractors to dispose of other Toxic Chemicals in an improper way, including, but not limited to, dumping or burying the toxic chemicals at the Industrial Property and at other locations in or around Lexington, Tennessee.

94.     Defendants' intentional acts in their release and/or discharge of Toxic Chemicals onto Plaintiffs' properties as well as any necessary remediation equipment or tools, have caused an invasion of Plaintiffs' property interests.

95.     Plaintiffs did not consent to the invasion of their properties by Defendants' release, discharge and distribution of these chemicals.

96.     Defendants knew or should have known that their release and/or discharge of these chemicals was substantially certain to result in an invasion of Plaintiffs' property interests.

97.     Defendants have created a continuing and continuous trespass by their release and/or discharge of these chemicals onto the Plaintiffs' properties.

98.     Defendants continuing and continuous trespass has impaired Plaintiffs' use of their properties and has caused them damages by diminishing the properties' values.

99.     As a direct and proximate result of Defendants' conduct, Plaintiffs have been caused to suffer, and will continue to suffer, significant damages, including, but not limited to, mental anguish, emotional distress, physical harm, threat of physical harm, injury to their

property and nearby property and assets, and diminished use and value of their property and nearby property and assets.

Count 5 – Public Nuisance

100.    Plaintiffs incorporate by reference all allegations in all other sections of this Complaint as if fully set forth herein.

101.    Trichloroethylene (TCE), Tetrachloroethylene (PCE), TCE degradation products and other hazardous chemicals and pollutants released and discharged by Defendants are highly toxic and hazardous chemicals, which have adverse effects upon all forms of life, including humans, animals and fish.  For decades, and continuing through the present, Defendants have engaged and/or otherwise allowed the release and spread of these and other toxic and harmful chemicals (a) onto the Industrial Property and other properties in the Lexington, Tennessee, area; (b) the air, soil, surface water and/or ground water in, on and/or near the Plaintiffs' properties; and/or (c) the Plaintiffs' bodies, thereby proximately causing injury and damage to the Plaintiffs.

102.    Defendants have created a continuing nuisance by their release and/or discharge of Toxic Chemicals that unreasonably interferes with or obstructs rights common to the public.

103.    As a result of Defendants' creation and maintenance of this nuisance, Plaintiffs and the public have been caused to suffer damages, including, but not limited to, mental anguish, emotional distress, physical harm, threat of physical harm, injury to their property and nearby property and assets, diminished use and value of their property and nearby property and assets, injury to public property, and diminished use and value of public property.

Count 6 – Private Nuisance

104.    Plaintiffs incorporate by reference all allegations in all other sections of this Complaint as if fully set forth herein.

29

105.    Trichloroethylene (TCE), Tetrachloroethylene (PCE), TCE degradation products and other hazardous chemicals and pollutants released and discharged by Defendants are highly toxic and hazardous chemicals, which have adverse effects upon all forms of life, including humans, animals and fish.  For decades, and continuing through the present, Defendants have engaged and/or otherwise allowed the release and spread of these and other toxic and harmful chemicals (a) onto the Industrial Property and other properties in the Lexington, Tennessee, area; (b) the air, soil, surface water and/or ground water in, on and/or near the Plaintiffs' properties; and/or (c) the Plaintiffs' bodies, thereby proximately causing injury and damage to the Plaintiffs.

106.    Defendants have created a continuing nuisance by their release and/or discharge of Toxic Chemicals that unreasonably interferes with or obstructs Plaintiffs' rights into their properties, including, but not limited to, their use and enjoyment of the land and the pollution of Plaintiffs' water supply by the migrating, toxic plume created by Defendants.

107.    As a result of Defendants' creation and maintenance of this nuisance, Plaintiffs and the public have been caused to suffer damages, including, but not limited to, mental anguish, emotional distress, physical harm, threat of physical harm, injury to their property and nearby property and assets, and diminished use and value of their property and nearby property and assets.

<u>Count 7 – Breach of Duty to Warn</u>

108.    Plaintiffs incorporate by reference all allegations in all other sections of this Complaint as if fully set forth herein.

109.    Defendants owed a duty to Plaintiffs to exercise due and reasonable care in notifying or warning Plaintiffs of the Toxic Chemicals that Defendants' wrongfully disposed of.

30

110.    Defendants breached their duties owed to the Plaintiffs by failing to adequately or sufficiently notify or warn Plaintiffs of the Toxic Chemicals or the dangers related to the Toxic Chemicals, including, but not limited to, the migrating, toxic plume.

111.    Defendants' breaches of their duties constitute negligence or gross negligence.

112.    Alternatively, Defendants' failure to warn was malicious, intentional, willful or reckless.

113.    Plaintiffs relied on Defendants representations, misrepresentations, and omissions in conducting Plaintiffs' activities, including, but not limited to, buying, selling, renting, and using properties in the negatively impacted areas.

114.    As a direct and proximate result of Defendants' conduct, Plaintiffs have been caused to suffer, and will continue to suffer, significant damages, including, but not limited to, mental anguish, emotional distress, physical harm, threat of physical harm, injury to their property and nearby property and assets, and diminished use and value of their property and nearby property and assets.

<u>Count 8 –Battery</u>

115.    Plaintiffs incorporate by reference all allegations in all other sections of this Complaint as if fully set forth herein.

116.    Defendants have intentionally and continuously committed battery to the Plaintiffs' persons by releasing and dispersing and failing to contain and remediate Trichloroethylene (TCE), Tetrachloroethylene (PCE), TCE degradation products and other hazardous chemicals and pollutants.

117.    Defendants' intentional actions have caused an unpermitted, harmful, or offensive bodily contact with Plaintiffs.

31

118.    Defendants knew or should have known that these chemicals would bio-accumulate in the sediment and other plant life in the air, soil, surface water and/or groundwater, on or near Plaintiffs' properties and in the plant life and vegetables planted and consumed by Plaintiffs.

119.    Defendants knew or should have known that these chemicals would be ingested by the Plaintiffs when they breathed the air, worked in their yards, gardened and/or ate food from the gardens or fish caught in the nearby rivers and their tributaries.

120.    As a direct and proximate result of Defendants' conduct, Plaintiffs have been caused to suffer, and will continue to suffer, significant damages, including, but not limited to, mental anguish, emotional distress, physical harm, threat of physical harm, injury to their property and nearby property and assets, and diminished use and value of their property and nearby property and assets.

Count 9 –Assault

121.    Plaintiffs incorporate by reference all allegations in all other sections of this Complaint as if fully set forth herein.

122.    Defendants have intentionally and continuously committed assault against the Plaintiffs by causing and inducing fear in Plaintiffs as a result of Defendants' releasing and dispersing and failing to contain and remediate Trichloroethylene (TCE), Tetrachloroethylene (PCE), TCE degradation products and other hazardous chemicals and pollutants.

123.    Defendants knew or should have known that these chemicals would bio-accumulate in the sediment and other plant life in the air, soil, surface water and/or groundwater, on or near Plaintiffs' properties and in the plant life and vegetables planted and consumed by Plaintiffs.

124.     Defendants knew or should have known that these chemicals would be ingested by the Plaintiffs when they breathed the air, worked in their yards, gardened and/or ate food from the gardens or fish caught in the nearby rivers and their tributaries.

125.     Defendants knew or should have known that these effects of their dumping Toxic Chemicals would create an apprehension of harm in the Plaintiffs.

126.     As a direct and proximate result of Defendants' conduct, Plaintiffs have been caused to suffer, and will continue to suffer, significant damages, including, but not limited to, mental anguish, emotional distress, physical harm, threat of physical harm, injury to their property and nearby property and assets, and diminished use and value of their property and nearby property and assets.

<u>Count 10 – Common Law Strict Liability</u>

127.     Plaintiffs incorporate by reference all allegations in all other sections of this Complaint as if fully set forth herein.

128.     By manufacturing, producing, creating, using, releasing and dispersing Trichloroethylene (TCE), Tetrachloroethylene (PCE), TCE degradation products and other hazardous chemicals and pollutants into the air, soil, surface water and/or groundwater in, on and/or near the Plaintiffs' properties, and into the Plaintiffs' bodies, and by allowing those pollutants to remain in said areas, Defendants have engaged in an abnormally dangerous, ultra-hazardous, and inherently or intrinsically dangerous activities for which they are strictly liable to Plaintiffs.

129.     As a direct and proximate result of Defendants' conduct, Plaintiffs have been caused to suffer, and will continue to suffer, significant damages, including, but not limited to, mental anguish, emotional distress, physical harm, threat of physical harm, injury to their

property and nearby property and assets, and diminished use and value of their property and nearby property and assets.

Count 11 – Punitive Damages

130.    Plaintiffs incorporate by reference all allegations in all other sections of this Complaint as if fully set forth herein.

131.    Defendants' actions described in this complaint, including, but not limited to the illegal dumping of Toxic Chemicals, was malicious, intentional, fraudulent, or reckless.

132.    Based on Tennessee Code Annotated § 29-39-104 or *Hodges v. SC Toof & Co.*, 833 S.W.2d 896 (Tenn. 1992), Plaintiffs are entitled to punitive damages.

Count 12 – Injunctive Relief

133.    Plaintiffs incorporate by reference all allegations in all other sections of this Complaint as if fully set forth herein.

134.    Defendants' unlawful conduct is ongoing.  They continue to violate statutory and common law rules that prohibit the illegal disposing of Toxic Chemicals and that require the proper remediation of any Toxic Chemicals illegally disposed of.

135.    Unless Defendants are temporarily, preliminarily, and permanently enjoined from engaging in the above-described misconduct, Plaintiffs will be irreparably injured by Defendants' wrongful violation of the above cited statutory and common law, including, but not limited to, continued mental anguish, emotional distress, physical harm, threat of physical harm, injury to their property and nearby property and assets, and even greater diminished use and value of their property and nearby property and assets.

136.    Plaintiffs have no adequate remedy at law for the immediate and irreparable harm they are suffering.

137.    Injunctive relief is needed to restore the Parties to as close to the situation that existed immediately before Defendants began engaging in their wrongful conduct.

138.    Injunctive relief is appropriate in these circumstances because Plaintiffs will most likely prevail on the merits of its claim and the balancing of the equities favors Plaintiffs.

<u>Count 13 – Successor Liability and Miscellaneous Claims</u>

139.    Plaintiffs incorporate by reference all allegations in all other sections of this Complaint as if fully set forth herein.

140.    Defendants John Zardis and Andre Gist are individually and personally liable for the debts of the Dissolved MIG given that the Dissolved MIG was administratively dissolved and John Zardis and Andre Gist failed to properly wind up the affairs of the Dissolved MIG.

141.    Upon information and belief, Defendants John Zardis and Andre Gist made distributions to themselves without properly dissolving or winding up the Dissolved MIG.

142.    Alternatively, Defendants John Zardis and Andre Gist are individually and personally responsible for the liabilities of the Dissolved MIG based on the doctrine of successor liability and/or piercing the corporate veil.

143.    Additionally and alternatively, Defendant the Active MIG is also responsible for the for the liabilities of the Dissolved MIG based on the doctrine of successor liability and piercing the corporate veil.

144.    The Active MIG has the exact same name as Dissolved MIG except that the Dissolved MIG ends in "L.L.C." whereas the Active MIG ends in "LLC."

145.    The Active MIG claims it "was established . . . in 1998," which was the year after the Dissolved MIG was created.

146.    The Active MIG claims that John Zardis and Andre Gist "acquired 100% ownership of the company in 2002," which was when Dissolved MIG existed and Active MIG had not yet been created.

147.    The Dissolved MIG and the Active MIG have the same members.

148.    Upon information and belief, the Active MIG has a significant portion of the Dissolved MIG's assets, including its goodwill.

149.    Upon information and belief, the transfer of assets, including goodwill, from the Dissolved MIG to the Active MIG was not supported by sufficient consideration.

150.    Upon information and belief, the transfer of assets from the Dissolved MIG to the Active MIG was to defraud creditors and third-party claimants.

151.    Upon information and belief, the Dissolved MIG or the Active MIG has an indemnification agreement with Johnson Controls, Inc. or Adient US LLC such that a remedy may be obtained by Plaintiffs against the Dissolved MIG or Active MIG if they are found liable.

152.    Upon information and belief, the Dissolved MIG or the Active MIG has an insurance coverage such that a remedy may be obtained by Plaintiffs against the Dissolved MIG or Active MIG if they are found liable.

153.    Upon information and belief, Johnson Controls, Inc. is responsible for any and all liabilities Adient US LLC may incur based on agreements between them regarding indemnification or responsibility for liabilities incurred in relation to the Industrial Property.

154.    Alternatively, Johnson Controls, Inc. is responsible for any and all liabilities Adient US LLC may incur given that the transfer of assets to Adient US LLC was intended to defraud creditors and third-party claimants from recovering any claims relating to or arising from

36

Johnson Controls, Inc.'s illegal and wrongful activities within its division of auto parts manufacturing, including the illegal and wrongful dumping of Toxic Chemicals.

155.    Alternatively, Johnson Controls, Inc. is responsible for any and all liabilities Adient US LLC may incur given that the transfer of assets to Adient US LLC was not supported by sufficient consideration.

156.    Upon information and belief, the transfer of the Industrial Property to the Active MIG was to defraud creditors and third-party claimants.

157.    Defendant Johnson Controls is also responsible for any and all liabilities of its predecessor in interest, Ferro Manufacturing, and its subsidiaries or affiliates based on successor liability because of the agreements with its subsidiaries or affiliates; because upon information an belief, the Parties intended to defraud creditors and third-party claimants from recovering any claims relating to or arising from illegal and wrongful activities within its division of auto parts manufacturing, including the illegal and wrongful dumping of Toxic Chemicals; and because upon information and belief, the transfer of any assets was not supported by sufficient consideration.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that the Court enter orders and a judgment in favor of Plaintiffs:

a)    that requires this case be tried before a jury;

b)    that grants a permanent injunction against Defendants preventing them from doing any further wrongful or illegal disposing of Toxic Chemicals and requiring Defendants to properly and fully remediate the pollution and contamination they have caused;

c)    that grants compensatory damages in the amount of $500,000,000.00;

d)      that grants punitive damages to each Plaintiff in an amount not to exceed the greater of $500,000, twice the amount of each Plaintiff's compensatory damages, or the constitutional limit for punitive damages;

e)      that grants all expenses, costs, and attorney's fees;

f)      that grants each Plaintiff treble damages

g)      that grants pre-judgment and post-judgment interest at the maximum rate allowable by law; and

h)      that grants such other relief as may be appropriate.

THIS IS PLAINTIFFS' FIRST APPLICATION FOR EXTRAORDINARY RELIEF IN THIS MATTER.

Respectfully submitted,


/s/Malcolm B. Futhey III
Malcolm B. Futhey III (TN 024432)
Futhey Law Firm PLC
1440 Poplar Avenue
Memphis, Tennessee 38104
901-725-7525
901-726-3506 (facsimile)
malcolm@futheylawfirm.com

Robert Stevie Beal (TN 007297)
Lena Beal (TN 030068)
Beal Law Office
22 Monroe Avenue
Lexington, Tennessee 38351
731-968-9077
731-968-0782 (facsimile)
beallawoffice@gmail.com

Donald W. Stewart* (AL ASB-8898-A19D)
W. Taylor Stewart* (AL ASB-9696-W57S)
Stewart & Stewart, P.C.
1021 Noble Street, Suite 110
Anniston, Alabama 36201
Tel: (256) 237-9311

Steven J. Baker* (FL 209813)
Steven J. Baker, P.A.
15 West La Rua Street
Pensacola, Florida 32501
Tel: (850) 434-3009

*Motions for *pro hac vice* admission to be
submitted

*Counsel for Plaintiffs*

Certificate of Service

I hereby certify that a copy of the foregoing has been served this 18th day of November 2018 via U.S. Mail, postage prepaid, and CM/ECF on the following:

Bradford Box, Esq.
Rainey, Kizer, Reviere, & Bell
209 East Main Street
P.O. Box 1147
Jackson, Tennessee 38302
bbox@raineykizer.com
*Counsel for Defendants Adient US LLC
and Johnson Controls, Inc.*

Hal Segall, Esq.
Leah Dundon, Esq.
Beveridge & Diamond P.C.
1350 I Street, NW, Suite 700
Washington, DC 20005
hsegall@bdlaw.com
*Counsel for Defendants Adient US LLC
and Johnson Controls, Inc.*

James Moskal, Esq.
Warner, Norcross, & Judd
45000 River Ridge Drive, Suite 300
Clinton Township, Michigan 48038
jmoskal@wnj.com
*Counsel for Defendants Manufacturers
Industrial Group, LLC; John Zardis;
and Andre Gist*

Joseph F. Welborn III, Esq.
B. Hart Knight, Esq.
Butler Snow LLP
The Pinnacle at Symphony Place
150 Third Avenue, South
Nashville, Tennessee 37201
Joe.welborn@butlersnow.com
*Counsel for Defendants Manufacturers
Industrial Group, LLC; John Zardis;
and Andre Gist*

/s/Malcolm B. Futhey III