IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

CHARLES E. ADAMS, *et al.*,

    Plaintiffs,

v.                                                                          No. 1:18-cv-01179-JDB-egb

ADIENT US LLC, *et al.*,

    Defendants.

___

ORDER GRANTING MOTION TO REMAND
___

This action was originally filed in Henderson County, Tennessee Circuit Court on August 2, 2018, by Plaintiffs, a putative class of property owners or residents of Lexington, Tennessee ("the residents"), whose properties or residences are located near an industrial site they allege discharged toxic chemicals into the air and groundwater. (D.E. 1-1 ¶¶ 1–2.) Defendants are individuals and entities that Plaintiffs claim are responsible for these emissions because they either previously operated the plant or are successors in interest to the operators. (*Id.* ¶¶ 1, 3–9.) The residents aver that Defendants are liable to them based solely on state law causes of action. (*Id.* ¶¶ 65–143.)

On September 14, 2018, Defendant, Adient US LLC, with the consent of the other Defendants, timely removed the case to this Court, pursuant to 28 U.S.C. §§ 1441, 1446. (D.E. 1 ¶¶ 1–3.) Defendants maintained that the Court had original jurisdiction based on both diversity of citizenship and the presence of a federal question. (*Id.* ¶¶ 7–17.) On October 10, 2018, Plaintiffs moved to remand the case back to state court. (D.E. 13.) Defendants responded, (D.E. 23), to which the residents replied and attached a proposed amended complaint that removed references

to federal law, (D.E. 23). The Court granted Plaintiffs' motion to amend, (D.E. 37), and as a result, Defendants submitted a sur-reply to address new issues created by the amendment. (D.E. 41.)

## BACKGROUND

In their complaint, the residents asserted that, beginning in 1985, Defendant, Johnson Controls, Inc., purchased and operated an automobile parts manufacturing plant in Lexington, Tennessee ("the industrial property"). (D.E. 38 ¶ 16.)[1] From 2006 until October 2013, Defendant, Manufacturers Industrial Group, L.L.C. ("the Dissolved MIG"), took over operations from Johnson Controls. (*Id.* ¶ 17.) The residents stated that, sometime in 2007, the Dissolved MIG established MIG Steel Fabrications, LLC ("MIG Steel") to also operate the industrial property. (*Id.* ¶ 18.) Johnson Controls then reacquired the industrial property in 2013 and continued the manufacturing operation. (*Id.* ¶ 19.) In 2016, Johnson Controls formed Adient US LLC to assume control of the operations. (*Id.* ¶¶ 20–22.) Adient currently owns and runs the plant. (*Id.*)

The residents contend that, in February 2007, Johnson Controls informed the Tennessee Department of Environment and Conservation that it believed the plant was discharging chemicals. (*Id.* ¶¶ 24–25.) The company then hired Weston Solutions, Inc. to investigate this problem and its effects. (*Id.* ¶¶ 26–27.) Weston Solutions discovered that the plant was indeed discharging chemicals and that a toxic groundwater plume had migrated to a nearby residential neighborhood. (*Id.* ¶¶ 28–33.) The breadth of the toxic plume expanded with time, possibly infiltrating several waterways in the area. (*Id.* ¶¶ 34–38, 42.) By 2014, Weston Solutions' remediation efforts had failed, and the contaminated water in the underground aquifer was considered unsafe for drinking. (*Id.* ¶¶ 40–41, 43.) Additionally, Weston Solutions' report indicated that the industrial property

---

[1] Citations will be made to Plaintiffs' amended complaint. Only material differences between the initial and the amended complaint will be noted.

was discharging chemicals into the air. (*Id.* ¶¶ 44–45.) The chemicals referenced in the complaint can cause serious health issues in humans, such as kidney dysfunction, various forms of cancer, cardiovascular problems, and psychological or emotional impairments. (*Id.* ¶¶ 49–53.)

The residents insist that they have been exposed to these chemicals and that Defendants have withheld information from them regarding the pollution and contamination. (*Id.* ¶¶ 55–64.) Plaintiffs sue Defendants under common law claims of negligence, intentional infliction of emotional distress, negligent infliction of emotional distress, breach of duty to warn, battery, assault, and strict liability. (*Id.* ¶¶ 68–87, 108–29.) In addition to the physical harm they have suffered, the residents also claim that their properties have been damaged, (*Id.* ¶¶ 59–65), and therefore, bring state law claims for trespass and public and private nuisance. (*Id.* ¶¶ 88–107.) Although not all Defendants directly operated the industrial property, Plaintiffs have alleged that they are liable as successors in interest to current or former entities that did. (*Id.* ¶¶ 139–57.)

## LEGAL STANDARD

"Federal courts are courts of limited jurisdiction." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Accordingly, there is a presumption that a cause of action lies outside a federal court's limited jurisdiction. *Kokkonen*, 511 U.S. at 377. A federal district court has original jurisdiction in two circumstances: (1) where diversity jurisdiction exists and (2) in "all civil actions arising under the Constitution, laws, or treaties of the United States," referred to as federal question jurisdiction. 28 U.S.C. §§ 1331–32.

In the court's determination of a motion for remand, the defendant bears the burden of demonstrating that removal of the case to federal court was appropriate. *State ex rel. Slatery v. Tenn. Valley Auth.*, 311 F. Supp. 3d 896, 902 (M.D. Tenn. 2018) (citing *Her Majesty the Queen in*

*Right of the Province of Ont. v. City of Detroit*, 874 F.2d 332, 339 (6th Cir. 1989)). "[B]ecause lack of jurisdiction would make any decree in the case void and the continuation of the litigation in federal court futile, the removal statute should be strictly construed and all doubts resolved in favor of remand." *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 550 (6th Cir. 2006) (alteration in original) (quoting *Brown v. Francis*, 75 F.3d 864–65 (3d Cir. 1996)).

## ANALYSIS

### *DIVERSITY*

Defendants claim that original federal jurisdiction exists based upon diversity of citizenship, as provided for in 28 U.S.C. § 1332. (*See* D.E. 1 ¶¶ 7–16.) In relevant part, § 1332 grants federal district courts jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States . . . ."[2] Courts have long interpreted § 1332 to require "complete diversity such that no plaintiff is a citizen of the same state as any defendant." *V & M Star, LP v. Centimark Corp.*, 596 F.3d 354, 355 (6th Cir. 2010) (citing *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005)). In addition, removal based on diversity is improper "if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2). Under § 1441(b)(2), the case could not be removed to this Court if Defendants John Zardis, Andre Gist, the Dissolved MIG, Manufacturers Industrial Group, LLC ("the Active MIG"), or MIG Steel were proper parties, as they are citizens of the forum state, Tennessee, for diversity purposes.[3] *See* 28 U.S.C. § 1332(c) ("For the purposes of this section and

---

[2] Defendants do not contest that the amount in controversy requirement is met. *See* (D.E. 1, 23, 40.)

[3] Defendants do not dispute that if the in-state Defendants were properly joined, the Court lacks diversity jurisdiction. *See* (D.E. 1, 23, 40.)

section 1441 of this title . . . a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business . . . ."). Defendants, therefore, argue that the in-state Defendants are nominal parties. (D.E. 1, 23, 40.)

Nominal parties are not to be considered by a court for purposes of determining subject matter jurisdiction. *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980) (citing *McNutt v. Bland*, 43 U.S. 9, 25–26 (1844)). "In contrast to 'a real party in interest,' a formal or nominal party 'is one who has no interest in the result of the suit and need not have been made a party thereto.'" *Maiden v. N. Am. Stainless, L.P.*, 125 F. App'x 1, 3 (6th Cir. 2004) (citing *Grand Cty. Deposit Bank v. McCampbell*, 194 F.2d 469, 472 (6th Cir. 1952)). Further, a party hoping to prove that joinder was fraudulent[4] for purposes of defeating diversity "must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law. However, if there is a colorable basis for predicting that a plaintiff may recover against non-diverse defendants," the case should be remanded. *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999) (citing *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994)).

In the event of a factual dispute that would resolve the question of jurisdiction, the Court "may 'pierce the pleading' and consider summary judgment evidence, such as affidavits presented by the parties . . . for the limited purpose of determining whether there are 'undisputed facts that

---

[4] Nominal parties and fraudulently joined parties are terms that appear to be interchangeable. However, when sitting as a district judge, Sixth Circuit Judge Amul Thapar explained: "[W]hile a fraudulently joined party is one on whom state law will not impose liability, a *nominal* party is one against whom the plaintiffs do not seek relief in the first place." *Auxier v. Liberty Mut. Ins. Co.*, Civ. No. 14-145-ART-HAI, 2014 WL 12649857, at *1 (E.D. Ky. Dec. 18, 2014). In this case, although Defendants use the term nominal parties, they appear to be arguing that they are fraudulently joined.

negate the claim.'" *Casias*, 695 F.3d at 433 (quoting *Walker v. Phillip Morris USA, Inc.*, 443 F. App'x 946, 952–56 (6th Cir. 2011)). However, this inquiry is limited to "consideration of such undisputed facts that undermine the well-pleaded claim that is otherwise colorable on its face." *Walker*, 443 F. App'x at 956. This restriction prevents the pleading standard from being elevated by removal and avoids compelling the plaintiff to prove its case before it has had the benefit of discovery. *Id.*

<u>Zardis and Gist</u>

Defendants maintain that Zardis and Gist are fraudulently joined because Tennessee law shields them from personal liability. (D.E. 23 at PageID 157.) They rely on Tenn. Code Ann. § 48-217-101(a)(1)–(b), which states that a member of an LLC "is not . . . personally liable for the . . . obligations of the LLC" even if the LLC is wound up. However, subpart (a)(3) of that section allows a member to be personally liable "by reason of that person's own acts or conduct." Furthermore, the separate doctrine of piercing the corporate veil exists in Tennessee.[5] *Edmunds v. Delta Partners, L.L.C.*, 403 S.W.3d 812, 828 (Tenn. Ct. App. 2012) ("The doctrine of piercing the corporate veil applies equally to cases in which a party seeks to pierce the veil of a limited liability company . . . ."). In their complaint, Plaintiffs allege that Zardis and Gist are liable under both of these circumstances. (D.E. 38 ¶¶ 140–42.)

Defendants also make much of the difference between "interim distributions" and "liquidation distributions" because liquidation distributions can be reached under Tenn. Code Ann. § 48-245-502. Interim distributions are made while the LLC is still active, *id.* § 48-236-102, while liquidation distributions occur as part of winding up, *id.* § 48-245-1101. There do not appear to

---

[5] Defendants misstated the law on this point when they asserted that "[t]he [LLC] Act also bars normal corporate veil piercing . . . ." (D.E. 23 at PageID 159.)

be any cases on point delineating interim from liquidation distributions, and Defendants urge the Court to make an affirmative decision based solely on their own affidavits. However, the Court finds Defendants' self-serving characterization of their distributions as meeting one definition but not the other unavailing. Because the law is not clearly settled that Zardis and Gist could not be liable, they are neither fraudulently joined nor nominal parties to the action.

The Dissolved MIG

Defendants likewise contend that the Dissolved MIG is a nominal plaintiff because relief cannot be obtained from it as a matter of Tennessee law. (D.E. 23 at PageID 154.) Both the original complaint, (D.E. 1-1 ¶¶ 65–135), and the amended complaint, (D.E. 38 ¶¶ 68–138), include the Dissolved MIG in all counts. This is not entirely without reason. Tenn. Code Ann. § 48-245-1201 states: "After an LLC has been terminated, any of its former . . . members may assert or defend, in the name of the LLC, any claim by or against the LLC."

Defendants dispute the use of this statute for two reasons. First, they argue that the LLC is without assets, and, therefore, under Tenn. Code Ann. § 48-245-502(d), relief could not be granted. This statute allows litigants to enforce their claims against a dissolved LLC "to the extent of its distributed assets," or against a member to the extent of his liquidation distribution. *Id.* Whether the assets have been distributed completely is, of course, a factual question. To that end, Defendant Gist declared that all assets were sold in 2013, with the LLC being entirely wound-up in August 2016.[6] (D.E. 23, Ex. C ¶¶ 8–10.) Failure to follow the statutory procedures, however, could allow Plaintiffs to reach the assets of a company under Tenn. Code Ann. § 48-245-502, as

---

[6] Gist indicated in an affidavit that, although the Dissolved MIG was "officially administratively dissolved" in August 2016, "the Tennessee Department of Revenue issued a tax clearance . . . indicating that the Dissolved MIG had satisfied all its tax liabilities" that had an effective date of December 31, 2015. (D.E. 23, Ex. C ¶¶ 8–10.)

7

this section allows claims to be brought when known or unknown claimants are not notified of dissolution in the manner prescribed in the statute. Both complaints allege that the Dissolved MIG was improperly wound-up, (D.E. 1-1 ¶ 137; D.E. 38 ¶¶ 140–41), and the Court is required to resolve all doubts "in favor of remand." *Arrington*, 130 F. Supp. 3d at 1155.

Next, Defendants assert that the plain language of § 48-245-1201 creates a right to sue and defend suit only in the members of the defunct LLC and not prospective plaintiffs. They point to the statute's title ("Right to sue or defend after termination") and its content ("members *may* assert or defend") as evidence of their position. Notably, Defendants cite no supportive case law to this effect, and there does not appear to be any. The only published Tennessee court decision to cite the statute appeared to contemplate that a defunct LLC could be sued. *See ARC LifeMed, Inc. v. AMC-Tennessee, Inc.*, 183 S.W.3d 1, 17 (Tenn. Ct. App. 2005) ("Even if a termination of [the counter-defendant] had actually occurred, . . . [the] Counter-complaint [is] properly before the Court under [Tenn. Code Ann. §] 48-245-1201.") Taken together, Plaintiffs have established a "colorable basis" that they could recover from the Dissolved MIG because it could be sued under the aforementioned statute and relief could be accorded if it was found to be improperly wound up.

<u>The Active MIG and MIG Steel</u>

Defendants insist that the Active MIG and MIG Steel had nothing to do with the operations of the industrial site and they are, therefore, nominal parties. (D.E. 1 ¶ 13; D.E. 40 at PageID 364–65.) However, Plaintiffs included the entities in their complaint as part of the successor liability claim. (D.E. 1-1 ¶ 139; D.E. 38 ¶¶ 143–52.) In Tennessee, a successor is liable for the debts of its predecessor if there is an

> express or implied undertaking of the liabilities in the form of (1) an express or implied assumption of such debts; (2) the transaction amounting to a consolidation

> or merger of the seller and purchaser; (3) the purchaser being a mere continuation of the seller[;] or (4) a fraudulent transaction.

*First Cmty. Bank*, 2014 WL 4102365, at *18 (alteration in original) (quoting *Gas Plus of Anderson Cty., Inc. v. Arowood*, No. 03A01-9311-CH-00406, 1994 WL 465797, at *3 (Tenn. Ct. App. Aug. 30, 1994)). While the original complaint makes a bald assertion of successor liability as to the Active MIG, the amended complaint provides more detailed allegations, including that the Active MIG's own timeline indicated that it had existed as one continuous company since 1998 and was not founded in 2018 as stated in Defendants' briefs. (D.E. 38 ¶¶ 144–47.) Plaintiffs' contentions regarding successor liability as to the Active MIG would pass ordinary pleadings standards because they allege facts that support their claims. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (explaining that although "detailed factual allegations" are unnecessary, a plaintiff must still "provide the grounds of [her] entitlement to relief" beyond just "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" to meet the pleadings standard). Accordingly, the Active MIG and MIG Steel are also not nominal parties.

*FEDERAL QUESTION*

Defendants maintain that the Court has jurisdiction over this case because of its references to federal law. (D.E. 1 ¶ 17.)

<u>Federal Question Analysis</u>

To determine whether a case "arises under" federal law and, thus, whether federal question jurisdiction exists, the court is to "consider the 'well-pleaded' allegations of the complaint." *Funderwhite v. Local 55, United Ass'n,* 702 F. App'x 308, 311 (6th Cir. 2017). In making that determination by the court, "jurisdiction exists *only* when a federal question is presented on the face of the plaintiff's complaint." *Paul v. Kaiser Found. Health Plan of Ohio*, 701 F.3d 514, 518 (6th Cir. 2012) (emphasis added) (quoting *Kitzmann v. Local 619-M Graphic Commc'ns*

9

*Conference*, 415 F. App'x 714, 716–18 (6th Cir. 2011)). The court is to look to "the plaintiff's statement of [its] own claim," *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 377 F.3d 592, 594 (6th Cir. 2004), recognizing "that the plaintiff is the master of [its] complaint," *Roddy v. Grand Trunk W.R.R. Inc.*, 395 F.3d 318, 322 (6th Cir. 2005). A plaintiff may, if it so chooses, "avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987).

However, even when a plaintiff insists that no federal claim has been alleged and that it did not intend to plead such a claim, certain exceptions to the well-pleaded complaint rule may allow a defendant to force the plaintiff into federal court notwithstanding its desire to proceed in state court. *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 560 (6th Cir. 2007). The exception under which Defendants proceed is the "substantial-federal-question doctrine," which has three factors: "(1) the state-law claim must necessarily raise a disputed federal issue; (2) the federal interest in the issue must be substantial; and (3) the exercise of jurisdiction must not disturb any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 568 (citing *Grable & Sons* 545 U.S. at 314 (2005)); *accord Mays v. City of Flint*, 871 F.3d 437, 449 (6th Cir. 2017), *cert. denied sub nom. Cook v. Mays*, 138 S. Ct. 1557 (2018). Courts must keep in mind that this category of cases is "special and small." *Mays*, 871 F.3d at 449 (citing *Gunn*, 568 U.S. at 258).

*Disputed Federal Issue*

The "disputed federal issue" factor would be met in the original complaint, as this inquiry requires the parties to "'cross swords over' a federal issue such that two competing interpretations are asserted." *Funderwhite* 702 F. App'x at 313 (citing *Mikulski*, 501 F.3d at 569). Clearly, the parties would have had to dispute whether the Clean Water Act ("CWA") section cited by Plaintiffs

had, in fact, been violated. However, Plaintiffs have since removed that language from the amended complaint, and, contrary to Defendants' assertions, proving any of Plaintiff's remaining claims does not require interpretation of that federal issue.

Furthermore, under current Sixth Circuit precedent, the residents likely could not have sustained their original assertion that Defendants violated the CWA. In *Ky. Waterways All. v. Ky. Utils. Co.*, 905 F.3d 925, 934 (6th Cir. 2018), *reh'g en banc denied*, Nov. 26, 2018, the appellate court held that the prohibitions of the CWA apply only to discharges directly into water sources from a "point source"—defined in 33 U.S.C. § 1362(14) as a "discernible, confined and discrete conveyance." The court read this definition to exclude the indirect contamination of waterways via groundwater, as claimed in this case. *Id.*; *see also Tenn. Clean Water Network v. Tenn. Valley Auth.*, 905 F.3d 436, 444–45 (6th Cir. 2018) (the companion case to *Kentucky Waterways*, holding the same); *Cty. of Maui v. Haw. Wildlife Fund*, 139 S. Ct. 619 (mem.) (2018) (granting certiorari on the same issue in a case where the Ninth Circuit held contrary to the Sixth Circuit).

*Substantiality*

The "substantiality" factor requires more than that the "federal issue be significant to the particular parties in the immediate suit," as "that will *always* be true when the state claim necessarily raises a disputed federal issue." *Gunn*, 568 U.S. at 260 (internal quotation marks omitted). The substantiality inquiry supports an exercise of jurisdiction when the issue is important to "the federal system as a whole," for example, where the state adjudication would "undermine the development of a uniform body of [federal] law." *Id.* at 260–61 (internal quotation marks omitted). Substantiality does not exist, however, where the issue is "fact-bound and situation-specific." *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 700–01 (2006). In determining substantiality, courts in this circuit consider four aspects of the case:

(1) whether the case includes a federal agency, and particularly, whether that agency's compliance with the federal statute is in dispute; (2) whether the federal question is important . . .; (3) whether a decision on the federal question will resolve the case (*i.e.*, the federal question is not merely incidental to the outcome); and (4) whether a decision as to the federal question will control numerous other cases . . .

*Funderwhite*, 702 F. App'x at 313–14 (quoting *Mikulski*, 501 F.3d at 570).

On the first factor, both versions of the complaint fail. No federal agency is involved in the suit, and to the extent that "federal agency actions or decisions" are involved in the original complaint, as Defendants state, (D.E. 23 at PageID 148), it is not clear how a state court's analysis of those actions could have a negative effect on the agency itself. In any event, this factor is a nullity in light of the new complaint, as a state court would no longer be asked to evaluate such decisions.

Both complaints fail on the second and fourth factors, as well. This factor "is far more subjective and requires" a court to "decide whether the question to be resolved is important." *Mikulski*, 501 F.3d at 570 (citing *Empire* 547 U.S. at 700). The original complaint would likely have required the interpretation of the CWA[7] for the resolution of Plaintiffs' negligence per se claim, but it is not clear, as Defendants suggest, that all claims would have required such an exploration of federal law. This is bolstered by the fact that Plaintiffs are willing to proceed in their new complaint without the assistance of those federal guidelines, and that the alternate forms of relief do not require the resolution of a federal question. *See, e.g., Rodriquez v. Hovensa L.L.C.*, Civ. Action No. 2012-100, Civ. Action No. 2012-101, Civ. Action No. 2012-104, 2014 WL 1308836, at *5 (D.V.I. Mar. 31, 2014) (citing *Mulcahey v. Columbia Organic Chems. Co.* 29 F.3d

---

[7] Other references in both complaints to EPA guidelines are provided only for support that specific chemicals are toxic and the dangers they present. (D.E. 38 ¶¶ 50–53.) There is no indication these definitions are contested, especially considering the fact that Defendants have not presented any dispute of these definitions as a defense.

12

148, 153–54 (4th Cir. 1994)) (finding no federal question jurisdiction where plaintiffs' complaint presented alternative forms of relief that did not require the use of the Clean Water Act).

Furthermore, it cannot be fairly said that Plaintiffs' state law claims are premised solely on affirmative duties provided for only in federal law. Nuisance, for instance, "is a tort characterized by interference with the use or enjoyment of the property of another." *Shore v. Maple Lanes Farms, LLC*, 411 S.W.3d 405, 415 (Tenn. 2013). Similarly, trespass only requires the invasion of a plaintiff's property be "physical and accomplished by a 'tangible matter.'" *Morrison v. Smith*, 757 S.W.2d 678, 681 (Tenn. Ct. App. 1988) (citing *Ryan v. City of Emmetsburg*, 4 N.W.2d 435, 438 (Iowa 1942)). Because the amended complaint requires no federal analysis, there is no federal question involved.

The third factor is similarly unavailing for Defendants in both complaints. The gravamen of almost all claims in this case is the determination of whether the plant site leaked toxic chemicals into the groundwater and whether Defendants are liable for the leakage. Interpretation of the CWA statute would not have resolved the case as presented in the initial complaint, and likewise, that undertaking would not decide the case now that reference to the statute has been removed.

*Federal-State Balance*

The final factor in the substantial-federal-question doctrine requires the Court to determine whether Congress would prefer "that the federal questions presented" in the case "be resolved by state courts." *Michigan v. Bay Mills Indian Cmty.*, 695 F.3d 406, 413 (6th Cir. 2012). Practically, this means that courts consider whether Congress has provided a federal remedy under which the plaintiffs could proceed. *Mays*, 871 F.3d at 450 (citing *Grable & Sons* 545 U.S. at 318). Courts also consider whether exercising federal subject matter jurisdiction in a case such as the one

13

presented would "herald[] a potentially enormous shift of traditionally state cases into federal courts." *Grable & Sons*, 545 U.S. at 319.)

This factor may be considered either neutral or slightly in favor of Defendants' argument. The CWA provides for a private remedy for citizens in these types of cases, and, therefore, exercising jurisdiction over this case would not result in a flood of cases to federal courts with new litigation. However, Plaintiffs' claims travel exclusively on state law assertions without any clear use of federal public policy arguments; thus, an exercise of jurisdiction in this case may presage a more accepting view of jurisdiction not contemplated by Congress.

Effect of Amendment

As mentioned herein, the residents' amendment to their complaint slightly alters the Court's analysis. As the Sixth Circuit explained:

> It is a fundamental principle of law that whether subject matter jurisdiction exists is a question answered by looking to the complaint *as it existed at the time the petition for removal was filed* . . . . When a subsequent narrowing of the issues excludes all federal claims, whether a pendant [sic] state claim should be remanded to state court is a question of judicial discretion, not of subject matter jurisdiction.

*Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195, 210–11 (6th Cir. 2004) (emphasis and alterations in original) (quoting *Long v. Bando Mfg. of Am., Inc.*, 201 F.3d 754, 758 (6th Cir. 2004)). Such a determination is made by weighing "the values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Additionally, "[t]he court also may consider whether the plaintiff has used 'manipulative tactics' to defeat removal," such as "'deleting all federal-law claims from the complaint and requesting that the district court remand the case.'" *Harper*, 392 F.3d at 211 (quoting *Carnegie-Mellon* 484 U.S. at 357).

The Sixth Circuit has found the exercise of supplemental jurisdiction was appropriate following the loss of subject matter jurisdiction in cases where "the district court was familiar with

14

the facts of the case" and had already "invested significant time in the litigation." *Id.* Specifically, in *Harper*, (1) the case had been on the court's docket for 11 months; (2) "the parties had completed discovery"; (3) the plaintiff "did not abandon his claim until he filed his amended complaint"; and (4) the defendants' "summary judgment motions were ripe for decision." *Id.*; *see also Burkhead & Scott, Inc. v. City of Hopkinsville*, 666 F. App'x 407, 409 (6th Cir. 2016) (supplemental jurisdiction appropriate where (1) case "pending nearly three years"; (2) "parties had completed discovery"; and (3) remand only requested after court had decided summary judgment motion in defendants' favor); *Stevens v. Saint Elizabeth Med. Ctr., Inc.*, 553 F. App'x 624, 633 (6th Cir. 2013) (supplemental jurisdiction appropriate where (1) case on court's docket for several years; and (2) remaining state law claims analyzed the same as federal law claims dismissed in summary judgment motion).

As previously explained, the Court lacks federal question jurisdiction over the amended complaint. Thus, the case could only be permitted to remain in this Court through the exercise of supplemental jurisdiction, which the Court declines to do. When the residents' motion to remand was filed, this case had been on the Court's docket less than a month. (D.E. 13.) As well, the parties have only completed minimal discovery. (D.E. 40 at PageID 359–60 (listing a Rule 26 conference, draft scheduling orders, initial disclosures, and a completed scheduling conference).) Furthermore, Defendants' suggestion that the Court should retain jurisdiction because the Henderson County state court would be an inadequate forum for such a case in fact violates the very principle of comity. *See Mikulski*, 501 F.3d at 561 ("state courts are generally presumed competent to interpret and apply federal law"); *see also Martin v. Hunter's Lessee*, 14 U.S. 304, 315 (1816) ("The state courts are to adjudicate under the supreme law of the land, as a rule binding upon them. They do not act upon it as judges determining by a foreign law . . . ; they act upon it

as a municipal law of the state where they sit, but derived from the government of the United States.")[8]

In sum, the original petition did not allege a sufficient enough substantial federal question to warrant removal, and now that the single reference to the CWA has been removed, an exercise of subject matter jurisdiction in this case would be without foundation, as would an exercise of supplemental jurisdiction.

*ATTORNEY'S FEES AND COSTS*

The residents additionally requested attorneys' fees and costs under 28 U.S.C. § 1447(c), which provides: "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." (D.E. 13-1 at PageID 106.) "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005); *accord Ohio ex rel. Skaggs v. Brunner*, 629 F.3d 527, 530 (6th Cir. 2010). Here, it cannot be said that Defendants' removal was objectively unreasonable. As noted, Defendants cited case authority and made non-frivolous arguments regarding the in-state Defendants. Additionally, Defendants did not have the benefit of *Ky. Waterways* at the time of removal, and also made non-frivolous arguments for federal question jurisdiction. Therefore, Plaintiffs' request for attorneys' fees and costs is DENIED.

---

[8] Regarding Defendants' claim that Plaintiffs removed the federal language from their complaint as a manipulative tactic, (D.E. 40 at PageID 358–59), the Court notes that no federal *claims* were removed from the complaint, just the references to federal law. In any event, as explained herein, the Court lacked subject matter jurisdiction over the original complaint.

## CONCLUSION

In light of the foregoing, Plaintiffs' motion to remand is GRANTED. For the same reasons, the Court declines to exercise jurisdiction over the cross-claims of Defendants Zardis, Gist, and the Dissolved MIG, (D.E. 53), as well as the third party complaint they filed against Hoover Universal, Inc, (D.E. 54). Therefore, the case in its entirety is hereby REMANDED to the Circuit Court of Henderson County, Tennessee for the Twenty-Sixth Judicial District.[9]

IT IS SO ORDERED this 11th of April, 2019.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE

---

[9] Plaintiffs' motion at D.E. 62 is DENIED AS MOOT.